IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-02834-ZLW

CLARA ANN LUCERO, o/b/o, J.L., a minor child,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

     Plaintiff[1] appeals the June 25, 2009, written decision of Administrative Law Judge Peggy S. Ball (ALJ) denying his claim for Social Security Supplemental Security Income (SSI).  The ALJ's decision was affirmed by the Appeals Council on October 6, 2009. (R. 1-4).  This appeal was timely filed.

     This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The Court has determined that the appeal can be resolved on the parties' briefing and that no oral argument is necessary.

_____

[1]The Court will refer to the minor child as Plaintiff.  Plaintiff's mother will be referred to as Lucero.

**BACKGROUND**

   **A.    Personal History, Alleged Disability, and Filing of Claims**

Plaintiff was born on October 11, 2000. (R. 3).  Plaintiff is a school-age child who lives in Pueblo, Colorado. (R. 13, 41).

Plaintiff filed a SSI application on December 13, 2006, alleging a disability onset date of December 11, 2002. (R. 41).  Plaintiff alleges the combination of the following conditions render him disabled: speech, cognition, and comprehension problems. (R. 42).

To receive SSI benefits, Plaintiff must show he was disabled after December 11, 2002, and the impairment lasted for a continuous period of not less than twelve months.[2]

Plaintiff's initial application was denied on May 30, 2007. (R. 41).  Plaintiff untimely filed a written request for his case to be heard by an ALJ. (R. 45).  The ALJ found good cause to allow the untimely filing. (R. 10, 55-56).

   **B.    Determination of Disability**

   An individual under the age of 18 shall be considered disabled
   . . . if that individual has a medically determinable physical or
   mental impairment, which results in marked and severe
   functional limitations, and . . . which has lasted or can be
   expected to last for a continuous period of not less than 12
   months.[3]

_____

   [2]42 U.S.C. § 1382c(a)(3)(C)(i).

   [3]42 U.S.C. § 1382c(a)(3)(C)(i).

Whether a juvenile has a disability supporting entitlement to SSI is determined using a three-step sequential evaluation process, which considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; and (3) has a condition which met, medically equaled, or functionally equaled the severity of a listed impairment.[4]

If a determination can be made at any step, it is not necessary to proceed to the next step of the analysis.[5]

To assess functional equivalence, the Commissioner considers how the claimant functions in activities in six domains, broad areas of functioning intended to capture all of what a child can or cannot do: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting an relating to others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.[6]

To establish function equivalence, a claimant must have a medically determinable impairment or combination of impairments that results in "marked" limitations in two domains or an "extreme" limitation in one domain.[7]  A marked limitation is when a claimant's impairment or combination of impairments interferes seriously with the ability to independently initiate, sustain, or complete activities.[8]  A marked limitation

---

[4]20 C.F.R. § 416.924(b)-(d); 20 C.F.R. pt. 404; subpt. P, app. 1.

[5]20 C.F.R. § 416.924(a).

[6]20 C.F.R. § 416.926a(b)(1).

[7]Id.

[8]20 C.F.R. § 416.926a(e)(2)(i).

is "more than moderate" but "less than extreme."[9]  An extreme limitation is when a

claimant's impairment or combination of impairments interferes very seriously with the

ability to independently initiate, sustain, or complete activities.[10] Marked or extreme

limitations may arise when several activities or functions are limited or when one is

limited.[11]

### C.   Medical/Disability Evidence

In January 2007, when Plaintiff was six years and three months old, his

performance was tested to be the age equivalent of a child aged five years and four

months for general education; four years and eleven months for reading; four years and

nine months for mathematics; four years and zero months for writing; and four years

and five months for spoken language. (R. 128).  Plaintiff did not know

all body parts, had problems listening to and following directions, and did not know

numbers above ten. (R. 148).

In January 2007, Dr. Margot DeVita administered a Wechsler Intelligence Scale

for Children (WISC) test.  Plaintiff had a full scale score of 72 and subtest scores of 63

(extremely low) for verbal comprehension, 86 (low average) for perceptual reasoning,

97 (average) for working memory, and 68 (extremely low) for processing speed. (R.

---

[9]Id.

[10]20 C.F.R. § 416.926a(e)(3)(i).

[11]20 C.F.R. § 416.926a(e)(2)(i) & (3)(i).

180-82).  Dr. DeVita reported that Plaintiff's overall cognitive ability could not be easily summarized because his nonverbal reasoning abilities were much better developed than his verbal reasoning abilities. (R. 230-31).

In February 2007, Plaintiff was reported to have speech difficulties, including problems with intelligibility, grammar, and vocabulary, and that he needed reminders to stay on task and needed one step directions. (R. 136-37).  At this time, both speech therapy and special education services were provided. (R. 145).

In March 2007, Plaintiff's teachers reported that his reading and math were at pre-primer levels and that he did not have any written language level because he was not yet able to hold a pencil. (R. 103-110).  Plaintiff's teachers indicated that he had a slight problem carrying out single-step instructions; an obvious problem paying attention when spoken to directly and sustaining attention during playground activities; a serious problem focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, waiting to take his turn, working without distracting himself or others, and working at a reasonable pace and finishing on time; and a very serious problem carrying out multi-step instructions, changing from one activity to another without being disruptive, organizing his own things or school materials, completing class and homework assignments, and completing work accurately without careless mistakes. (R. 104-06).  Instructions needed to be repeated many times and Plaintiff would forget instructions from day to day; instead, he looked to see what other children were doing and imitated them. (R. 105).

Amy Kunstle, RD, MA, CCC-SLP, conducted a pediatric speech/language evaluation in May 2007.  Plaintiff's language skills were described as scattered but mostly in the average to below average range, with the exception of picture vocabulary and grammatic completion, which were in the poor to very poor range. (R. 185-186).  He scored in the average range for oral vocabulary. (R. 186).  Kunstle said that Plaintiff had a mild to moderate delay in his expressive language, including vocabulary development and the ability to understand and use grammar proficiently. (R. 187).  His speech production abilities at the word and short phrase levels were indicative of a child within normal limits, although his intelligibility was noted to decrease with longer sentences or excitement. (R. 187).  Kunstle recommended that Plaintiff continue with speech/language intervention addressing the goals of enriching vocabulary, understanding of grammar, and knowledge of sentence structure (R. 187).

James Wanstrath, Ph.D., completed a childhood disability evaluation form in May 2007 after reviewing the record.  Dr. Wanstrath opined that Plaintiff had a marked limitation with respect to acquiring and using information. (R. 192).  He noted that Plaintiff's WISC showed a wide range of scores, which were probably not an accurate representation of his skills but instead were likely affected by his comprehension difficulties. (R. 192).  With respect to attending and completing tasks, Dr. Wanstrath opined that Plaintiff's difficulties were less than marked. (R. 192).  He said that Plaintiff's attention did not seem limited, but his comprehension difficulties affected his ability to

complete tasks. (R. 192).  He also noted that Plaintiff appeared to do well by modeling others. (R. 192).

In February 2008, Plaintiff was reported to perform adequately within the first grade curriculum and on age appropriate tasks. (R. 155).  He was slightly below grade level in reading, but had shown gains in his Dynamic Indicators of Basic Early Literacy Skills scores. (R. 155).  Plaintiff adapted well to different learning environments, but tended to have a difficult time managing his feelings and teased other students. (R. 155).  Plaintiff could learn and think well within the classroom environment, but would give up on certain activities due to difficulties with problem solving. (R. 156).  He sometimes retained materials, stayed on task, and followed directions. (R. 166).  Although continued additional speech therapy was provided, no special education services were . (R. 158).

In May 2008, Plaintiff's first grade teacher stated that he was mainstreamed and functioning at the first grade level, had pretty good attention span and concentration, but was sometimes off task due to behavior with other students. (R. 172).  The teacher indicated that although attendance was not an issue, Plaintiff sometimes did not complete homework. (R. 172).  He also said Plaintiff responded very well to changes in the classroom environment and appeared to be doing well with his fine and gross motor skills. (R. 172).  However, Plaintiff was very aggressive towards other students and frequently teased them, was described as "very defiant," and had difficulty expressing himself because of his aggressive and defiant behavior. (R. 172).

In May 2008, Rene Larrabee, SP, had an initial therapy session with Plaintiff and his mother.  Plaintiff talked about his video games and could not be redirected to talk about other topics. (R. 201).  There was discussion how these games caused his aggressive behavior towards others in school. (R. 201-02).  Later that month, Lucero reported that Plaintiff was doing much better at home and school since he started a behavior plan. (R. 216).  Although Larrabee requested a follow-up visit, none was ever scheduled. (R. 211).

In June 2008, Lucero told Sara Crowner, M.D., a psychiatrist, that Plaintiff had to be told five times to do something. (R. 215).  Lucero also said Plaintiff knew how to read and did well in school, but got angry and physical and could pay attention to some things but not others. (R. 214).  Lucero said Plaintiff went to bed at 9 p.m. on school nights, 11 p.m. on weekends, and was up at 7 a.m. on school days. (R. 213).  Plaintiff was observed playing with toys for about 20 minutes each, showing good attention and concentration. (R. 213).

Dr. Crowner's assessment was oppositional-defiant disorder, and she did not think there was enough to diagnose attention deficit hyperactivity disorder (ADHD). (R. 213-14).  She said that there did seem to be some emotional immaturity and instability problems dealing with anger and disappointment, but that this might be more noticeable because Plaintiff looked much older than he was and more was expected of him. (R. 213).  She recommended that Plaintiff increase his sleep time, to rule out sleep

deprivation as a cause of the behavioral issues, and that he receive speech therapy. (R. 213).

In August 2008, Robert Crowley, MA, the school psychologist, completed a Childhood Disability Evaluation Form.  Crowley never personally met Plaintiff. (R. 219). Crowley said Plaintiff did not have ADHD and that the school had not seen an usual level of inattention that would warrant further evaluation. (R. 219).  He characterized Plaintiff's inattention, impulsiveness, and hyperactivity as mild, reported only mild deficits in age appropriate cognitive, communicative, and social functioning, and reported no deficits in appropriate personal functioning. (R. 219-20).  Crowley said that Plaintiff was only eligible for speech and language disability, and that these areas had improved. (R. 220).  He also said that Plaintiff's mild deficits in social functioning had not had a huge impact on school functioning. (R. 220).

Crowley opined that Plaintiff had marked limitations in acquiring and using information based on his speech evaluation and the verbal comprehension portion of his WISC results. (R. 220).  He also said that Plaintiff had marked difficulties with attending and completing tasks, basing this conclusion on Plaintiff's reported difficulty producing school work if supervision was not immediately present. (R. 221).  He speculated that Plaintiff needed structure, like what he had in his mainstream first grade classroom, to perform at his best and acknowledged that Plaintiff was on grade level academically. (R. 223).

**D.     The Administrative Hearing (R. 23-40)**

The administrative hearing was held in Pueblo, Colorado on September 18, 2008. (R. 25).  Plaintiff was represented by an attorney.  The following individuals testified: Plaintiff and Clara Ann Lucero, Plaintiff's mother.

Plaintiff testified that he was seven years old, in second grade, and liked writing, reading, and mathematics. (R. 26-27).

Lucero testified that Plaintiff would be pulled from his classroom to attend special education for subjects he needed extra help in, and then would go back to the regular class. (R. 28-29).  In kindergarten, Plaintiff was pulled out for two hours a day, and in first grade he was pulled out, for speech therapy only, for two hours twice per week. (R. 34-35).  Plaintiff needed special help with reading and writing and he needed the most work with respect to vocabulary. (R. 29, 31).  Plaintiff did not need help with math. (R. 31).  There was no concern that he would not be promoted to second grade. (R. 37).  Lucero needed to help Plaintiff with his homework, mainly by directing him to stay on task. (R. 37).

Lucero reported she would often tell Plaintiff to do something and he would not finish what she asked him to do. (R. 29).  Plaintiff did not listen to everything, and would do only half of what Lucero asked. (R. 30).  Lucero reported Plaintiff was never able to perform a task from start to finish, but Plaintiff disagreed and said he finished his homework for her. (R. 30).

10

**E.     The ALJ's Decision (R. 10-22)**

The ALJ's written decision proceeds through all three steps of the sequential analysis for childhood disability.  The ALJ determined Plaintiff was not disabled as defined by the Social Security Act and denied Plaintiff's application for SSI. (R. 22).

At step one the ALJ determined Plaintiff was a school-aged child and had not engaged in substantial gainful employment activity during the alleged period of disability. (R. 13).  At step two the ALJ determined that Plaintiff had the following severe impairments: borderline intellectual functioning and speech articulation delays. (R. 13).

At step three the ALJ determined that Plaintiff's impairments did not meet or medically equal an item in the Listing of Impairments. (R. 13).  Further, the ALJ determined that Plaintiff's impairments did not functionally equal a listed impairment. (R. 13).  The ALJ determined that the Plaintiff had marked limitations in "acquiring and using information"; less than marked limitations in "attending and completing tasks" and "relating with others"; and no limitations in the remaining three domains. (R. 16-22). Since Plaintiff was determined to have only one domain of marked limitation, instead of the two domains necessary under the rules, the ALJ concluded Plaintiff was not disabled. (R. 22).

**ANALYSIS**

**A.      Standard of Review**

When a district court reviews the Commissioner's decision to deny Social

Security benefits the <u>Court's only job is to determine whether the Commissioner's</u>

<u>factual findings are supported by substantial evidence in the record as a whole and</u>

<u>whether the correct legal standards were applied.</u>[12]   Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.[13]   Since review is based on the record as a whole, the entire record must be

examined to determine whether the evidence supporting the decision is substantial,

taking "into account whatever in the record fairly detracts from its weight."[14]   However,

<u>the Court may neither reweigh the evidence nor substitute its discretion for that of the</u>

<u>ALJ.</u>[15]   The ALJ's decision must be evaluated solely upon the reasons stated in the

decision.[16]

---

[12]<u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003).

[13]<u>Id.</u>

[14]<u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004) (*quoting* <u>Washington v. Shalala</u>, 37 F.3d 1437, 1439 (10th Cir. 1994)).

[15]<u>White v. Massanari</u>, 271 F.3d 1256, 1257 (10th Cir. 2001).

[16]<u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

**B.      Plaintiff's Arguments**

Plaintiff argues that the ALJ's finding that there was less than marked impairment in the domain of attending and completing tasks is incorrect.  Instead, Plaintiff argues the ALJ should have found that Plaintiff had marked impairment in this domain, resulting in two domains of marked impairment which would entitle Plaintiff to SSI.[17]

Plaintiff raises three objections to the ALJ's findings.

**1. Rejection of school psychologist's opinion**

Plaintiff first objects that the ALJ did not have proper reasons for rejecting the opinion of Robert Crowley, the school psychologist.  Crowley opined that the Plaintiff had marked impairment in the domain of attending and completing tasks but the ALJ did not give this opinion significant weight.

The ALJ treated Crowley as an "other source" while Plaintiff claims he should instead be treated as an "acceptable source."[18]  The Court agrees with Plaintiff that Crowley is best characterized as an acceptable medical source because he is a "school psychologist . . . for purposes of establishing . . . learning disabilities [] and borderline intellectual functioning."[19]  The ALJ thus erred by treating Crowley as an "other source."

---

[17]*See* 20 C.F.R. § 416.926a(a).

[18]*See* 20 C.F.R. § 416.913.

[19]20 C.F.R. § 416.913(a)(2).

Additionally, the ALJ's sole stated reason for rejecting Crowley's opinion, that it was internally inconsistent, is not supported by the evidence.  Crowley opined that Plaintiff had mild limitations in inattention, impulsiveness, and hyperactivity and age-appropriate cognitive and communicative functioning. (R. 18).  However, Crowley subsequently indicated that Plaintiff had marked limitations in the domains of acquiring and using information and attending and completing tasks. (R. 18).

The Court agrees with the Plaintiff that the ALJ does not have the expertise to determine how Plaintiff's combination of deficits relate to the ability to attend to and complete tasks.  Plaintiff's combination of many mild deficits, treated as a whole, may indicate a marked limitation in a domain.  This decision was Crowley's to make.  The form Crowley used for his evaluation had the legal criteria for determining what a marked limitation is.  Therefore, Crowley's conclusion must be accepted by the ALJ unless there is no credible evidence to support it.[20]  Crowley found at least five areas where Plaintiff had at least a mild deficit, so there is ample evidence to support his conclusion of a marked limitation.[21]

On remand, the ALJ must treat Crowley's opinion as coming from an acceptable medical source and must evaluate re-evaluate Crowley's opinion that Plaintiff has marked limitations in two domains.

---

[20]See McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

[21]The Court notes that the fact Crowley never met Plaintiff is irrelevant as Dr. Wanstrath, the state agency psychologist whose opinion the ALJ adopted, never met Plaintiff either.

14

### 2. Observations of Plaintiff's teachers

Plaintiff next objects that the ALJ did not properly assess the statements of his teachers.  Teachers are considered to be "other sources" who are allowed to give opinions on the severity of an impairment.[22]  The ALJ only briefly mentions the teachers' opinions, and mentions only the opinions that support her conclusions. (R. 21-22).  The ALJ never discusses what weight she gives these opinions.

The Court agrees with Plaintiff that the ALJ failed to adequately address the teachers' comments.  Although they may not be conclusive evidence, the teachers' comments corroborate Crowley's evaluation and conclusions.[23]  Additionally, the ALJ needs to explain why the opinion of the state agency non-examining psychologist deserves to outweigh that of the educational professionals who has the opportunity to observe the child in a professional setting.[24]

On remand, the ALJ needs to examine the teachers comments regarding Plaintiff's ability for attending and completing tasks.

----

[22]20 C.F.R. § 416.913(d).

[23]*See* 20 C.F.R. § 416.927(d)(4).

[24]"An opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source.  For example, this could occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." Social Security Ruling 06-03p, 2006 WL 2329939.

### 3. Credibility of Plaintiff's mother's testimony

Plaintiff next objects that the ALJ did not properly assess the credibility of the testimony of his mother.  Lucero's testimony included discussion on the difficulties in keeping Plaintiff focused on tasks and in following instructions.  After discussing her testimony, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; i.e., not being able to stay on task." (R. 14).  However, the ALJ also concluded that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained [in the ALJ's order]." (R. 14).

The Court agrees with the Plaintiff that Lucero's testimony was not properly evaluated by the ALJ.  Since Plaintiff could not adequately testify on his own behalf, Lucero's testimony as to his symptoms must instead be used.[25]  The ALJ must make specific findings concerning the credibility of her testimony.[26]

Here, the ALJ's statement that Lucero's testimony is not credible appears to be "just a conclusion in the guise of findings."[27]  The ALJ does not explain what specific evidence leads her to discount the testimony; instead, the ALJ expresses that she

---

[25]20 C.F.R. § 416.928(a).

[26]*See* Briggs *ex rel* Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001).

[27]Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

disagrees with the testimony simply because it does not match her conclusion.  This

explanation is too vague.  Considering that Lucero's testimony is consistent with all of

the other individuals that had direct contact with Plaintiff, the ALJ must thoroughly

explain why she has determined that the testimony is not credible.[28]

On remand, the ALJ must make specific findings concerning the credibility of

Lucero's testimony.


**ORDER**

Accordingly, it is

ORDERED that the June 25, 2009, written decision of Administrative Law Judge

Peggy S. Ball is reversed.  It is

FURTHER ORDERED that this case is remanded to the Administrative Law

Judge for reconsideration under Sentence Four of section 205(g) of the Social Security

Act,  42 U.S.C. § 405(g), consistent with the Court's findings and conclusions.  It is

---

[28]Briggs, 248 F.3d at 1239.

FURTHER ORDERED that on remand the ALJ is instructed to provide the

necessary narrative discussion as explained above.

DATED at Denver, Colorado, this 23rd day of February, 2011.

BY THE COURT:

_____

ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

18