IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02834-WJM-BNB

CLARA ANN LUCERO, o/b/o J.L., a minor child,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter arises on the plaintiff's **Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412** [Doc. #19, filed 05/10/2011] (the "Motion"). I respectfully RECOMMEND[1] that the Motion [Doc. # 19] be GRANTED and that the plaintiff be awarded attorney's fees and costs in the amount of $6,130.37.

## I. BACKGROUND

The plaintiff was born on October 11, 2000. *Record*, p. 13. On December 13, 2006, his mother, Clara Ann Lucero, filed an application on behalf of the plaintiff for Supplemental Security Income under Title XVI of the Social Security Act. Id. at pp. 81-83. The application alleges that the plaintiff suffers from a disability which began on December 11, 2002. Id. at p. 81. The plaintiff claims a disability based on speech, cognition, and comprehension problems. Id. at p. 42.

---

[1]Pursuant to Fed. R. Civ. P. 54(d)(2)(D), the court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive matter." Consequently, I may proceed only by recommendation and not by order.

The application was denied on May 30, 2007. Id. at pp. 42-44. On August 14, 2007, the plaintiff submitted a request for a hearing by Administrative Law Judge ("ALJ"). Id. at p. 45. The ALJ issued a written decision on June 25, 2009, finding that the plaintiff was not disabled as defined in the Social Security Act. Id. at pp. 10-22. The plaintiff submitted a request for review of the decision in August 2009. Id. at p. 5. The Social Security Administration Appeals Counsel denied the plaintiff's request for review. Id. at pp. 1-3.

Pursuant to 42 U.S.C. § 405(g), the plaintiff sought judicial review on December 3, 2009 [Doc. #3]. On February 23, 2011, the district judge reversed the ALJ's decision and remanded the case for reconsideration consistent with the court's findings and conclusions. *Order* [Doc. #17]. The plaintiff seeks an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

## II. THE LAW

Section 2412 provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." Id. at § 2412(d)(1)(B).

The United States bears the burden of establishing that its litigation position was substantially justified. Weakley v, Bowen, 803 F.2d 575, 577 (10th Cir. 1986). "The standard

under which substantial justification is scrutinized, articulated in EAJA's legislative history and uniformly cited by most courts addressing the issue (including this court), is that of reasonableness in both law and fact." Id. (internal quotations and citations omitted). "In other words, the government's position must be justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." Gatson v. Bowen, 854 F.2d 379, 380 (10th Cir. 1988) (internal quotations and citations omitted). "[T]he reasonableness test breaks down into three parts: the government must show that there is a reasonable basis . . . for the facts alleged . . .; that there exists a reasonable basis in law for the theory it propounds; and that the facts alleged will reasonably support the legal theory advanced." Id. (internal quotations and citations omitted).[2]

Under the Social Security Act, a child's disability is determined as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).

Disability determination requires consideration of whether the claimant (1) is engaged in substantial gainful activity; (2) has a medically determinable severe physical or mental impairment; and (3) has an impairment which meets, medically equals, or functionally equals the severity of a listed impairment. 20 C.F.R. § 416.924(a). In determining whether an impairment

---

[2]The substantial justification standard under the EAJA is not synonymous with the substantial evidence standard under the Social Security Act. Hadden v. Bowen, 851 F.2d 1266, 1269 (10th Cir. 1988).

functionally equals a listed impairment, the claimant's functioning is assessed in terms of six domains:[3] (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); (d); (g) - (l). To functionally equal the listings, the claimant's impairments or combination of impairments must result in "marked" limitations in two domains or an "extreme" limitation in one domain. Id. at § 416.926a(a); (d). The claimant's functioning is compared to the typical functioning of children of the same age who do not have impairments. Id. at § 416.926a(f).

## III. ANALYSIS

The ALJ determined that the plaintiff has not engaged in substantial gainful activity at any relevant time. *Record*, p. 13. She further determined that although the plaintiff has a severe impairment in the form of borderline intellectual functioning and speech articulation delays, the impairment does not meet, medically equal, or functionally equal the severity of a listed impairment. Id. Specifically, the ALJ found that the plaintiff has a marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks and in interacting and relating with others; and no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being. Id. at pp. 16-21. Because the ALJ determined that the plaintiff has only one domain of marked limitation, she found that the plaintiff is not disabled as defined by the Social Security Act. Id. at p. 22.

[3]"[D]omains are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

The plaintiff sought review in this court on the basis that the ALJ should have found that the plaintiff has a marked impairment in the domain of attending and completing tasks. *Order* [Doc. #17], p. 13. Specifically, the plaintiff argued:

1. The Commissioner failed to properly weigh the opinion of Robert Crowley, the school psychologist, who opined that the plaintiff had a marked impairment in the domain of attending and completing tasks;

2. The ALJ failed to consider the statements made by the plaintiff's teachers; and

3. The ALJ did not properly assess the credibility of Ms. Lucero.

*Complaint* [Doc. #3], ¶ 6; *Order* [Doc. #17], pp. 13-17.

**A. Rejection of Mr. Crowley's Opinion**

**1. Acceptable Medical Source**

The district judge agreed with the plaintiff that the ALJ erred in treating Mr. Crowley as an "other source" instead of an "acceptable medical source." *Order* [Doc. #17], p. 13. Citing 20 C.F.R. § 416.913(a)(2), the district judge stated that "Crowley is best characterized as an acceptable medical source because he is a "school psychologist . . . for purposes of establishing . . . learning disabilities [] and borderline intellectual functioning."

Section 416.913(a)(2) states that acceptable medical sources include:

> Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only[.]

The Commissioner argues that it was reasonable to argue that Mr. Crowley was not an acceptable medical source because (1) Mr. Crowley has a Master's Degree, not a Ph.D; (2) there

is no evidence he is a licensed psychologist; (3) "while school psychologists should be considered acceptable medical sources for 'establishing mental retardation, learning disabilities, and borderline intellectual functioning,'" they should not be considered acceptable medical sources for determining functional limitations; and (4) Mr. Crowley never personally examined or evaluated the plaintiff. *Defendant's Response to Plaintiff's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act, 28 U.S.C.. § 2412* [Doc. #20] (the "Response"), p. 5.

The Commissioner first argues that Mr. Crowley's credentials are insufficient to qualify as an acceptable medical source.[4] However, section 416.913(a)(2) does not require a school psychologist to have a PhD; it requires only that the psychologist be licensed or certified. Although there is no evidence that Mr. Crowley is a licensed psychologist, there is no evidence that he is *not* licensed or certified, and there is no evidence that the ALJ attempted to clarify Mr. Crowley's credentials. Therefore, it is unreasonable to argue that the ALJ properly discounted Mr. Crowley's opinion on the basis that he is not licensed or certified.

The Commissioner also contends that Mr. Crowley is not an acceptable medical source because Mr. Crowley never personally examined or evaluated the plaintiff.[5] Section 416.913(a) does not require that a school psychologist personally examine or evaluate a child in order to be considered an acceptable medical source. It is not reasonable for the Commissioner to argue that Mr. Crowley is not an acceptable medical source because he never examined the plaintiff.[6]

---

[4]The Commissioner does not cite to any legal support for this argument.

[5]The Commissioner does not cite to any legal support for this argument.

[6]I am aware that the ALJ may give more weight to opinions from treating sources as opposed to nontreating sources. 20 C.F.R. § 416.927. However, the treating versus nontreating

Finally, the Commissioner argues that "while school psychologists should be considered acceptable medical sources for 'establishing mental retardation, learning disabilities, and borderline intellectual functioning,' they should be considered such only for this limited purpose. . . . Here, it was reasonable for the Commissioner to argue that Mr. Crowley was not an acceptable medical source for purposes of determining [the plaintiff's] ***functional limitations*** compared to other children without an impairment." *Response*, p. 5 (emphasis in original).

This argument is unreasonable because evidence from both "acceptable medical sources" and "other sources" may be used in the determination of functional limitations. The Social Security Administration has stated:

> Once we have evidence from an acceptable medical source that establishes the existence of at least one medically determinable impairment, we consider all relevant evidence in the case record to determine whether a child is disabled. This evidence may come from acceptable medical sources and from a wide variety of "other sources."
>
> Medical Sources: Acceptable medical sources can provide information about how an impairment(s) affects a child's everyday activities. For example, a pediatrician might discuss the impact of asthma on a child's participation in physical activities, or a speech-language pathologist might discuss how a language disorder contributes to limited attention and problems in school.
>
> We cannot use evidence from other medical sources who are not "acceptable medical sources" to establish that a child has a medically determinable impairment. However, we can use evidence from these sources, such as nurse-practitioners,

---

relationship is not relevant to the determination of whether the source is an "acceptable medical source" or an "other source." Insofar as the Commissioner is arguing that Mr. Crowley's opinion should have been accorded less weight than Dr. Wanstrath's opinion because Mr. Crowely did not personally examine the plaintiff, the district judge found that, "the fact that Crowley never met Plaintiff is irrelevant as Dr. Wanstrath, the state agency psychologist whose opinion the ALJ adopted, never met Plaintiff either." *Order* [Doc. #17], p. 14, n. 21.

> physicians' assistants, naturopaths, chiropractors, audiologists, occupational therapists (OTs), physical therapists (PTs), and psychiatric social workers (PSWs), to determine the severity of the impairment(s) and how it affects the child's ability to function compared to children of the same age who do not have impairments.

SSR 09-2, 2009 WL 396032, at *3 (Feb. 18, 2009).[7]

Indeed, the Commissioner cites SSR 06-3P in support of his argument, *Response*, p. 5, which states that "[i]n addition to evidence from acceptable medical sources, we may use evidence from other sources . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Id. at *2 (internal quotations omitted).

Thus--regardless of whether Mr. Crowley is considered an acceptable medical source or an other source--his evaluation of the plaintiff may be used to determine if the plaintiff's medically determinable impairments functionally equal the listings. It is not reasonable for the Commissioner to argue otherwise.

**2. Internally Inconsistent Opinion**

The ALJ stated that she was unable to give Mr. Crowley's opinion significant weight because it was internally inconsistent. *Record*, p. 18. Specifically, the ALJ stated:

> [Mr. Crowley] expressed the opinion that the claimant has mild limitations in inattention, impulsiveness, and hyperactivity, and age-appropriate cognitive and communicative functioning. However, Mr. Crowley subsequently indicated that the claimant has marked limitations in the domains of acquiring and using information, and attending and completing tasks. Consequently, as Mr. Crowley's opinion is internally inconsistent, the undersigned is unable to give it significant weight . . . .

[7]Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

Id.

The district judge found that the ALJ erred in rejecting Mr. Crowley's opinion as internally inconsistent:

> The Court agrees with the Plaintiff that the ALJ does not have the expertise to determine how Plaintiff's combination of deficits relate to the ability to attend to and complete tasks. Plaintiff's combination of many mild deficits, treated as a whole, may indicate a marked limitation in a domain. This decision was Crowley's to make. The form Crowley used for his evaluation had the legal criteria for determining what a marked limitation is. Therefore, Crowley's conclusion must be accepted by the ALJ unless there is no credible evidence to support it. Crowley found at least five areas where Plaintiff had at least a mild deficit, so there is ample evidence to support his conclusion of a marked limitation.
>
> On remand the ALJ must treat Crowley's opinion as coming from an acceptable medical source and must evaluate re-evaluate [sic] Crowley's opinion that Plaintiff has marked limitations in two domains.

*Order* [Doc. #17], p. 14.

The district judge cited McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002), in support of her finding. In McGoffin, the Tenth Circuit stated that an ALJ may reject a treating physician's opinion only on the basis of contradictory medical evidence and not due to his or her speculation or lay opinion. Id. Under the applicable regulation, the weight given to non-examining sources depends on "the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(d)(3). The ALJ may request additional evidence or clarification from the medical source if his or her report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to

be based on medically acceptable clinical and laboratory diagnostic techniques." Id. at § 416.913(e)(1).

The Commissioner has taken the position that it was proper for the ALJ to discount Mr. Crowley's opinion that the plaintiff has a marked limitation in the domain of attending and completing tasks upon finding that it was internally inconsistent with his other findings of mild limitations in inattention, impulsiveness, hyperactivity, and age-appropriate cognitive and communicative functioning. *Response*, p. 4. The Commissioner further states that "it seems quite reasonable that the degree of limitation in areas such as inattention, impulsiveness, hyperactivity, and cognitive functioning would be a key indicator of a child's ability to attend and complete tasks." Id. at pp. 4-5.

The Commissioner cites Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995) in support of his position. In Smallwood, the court rejected a residual functional capacity questionnaire submitted by the claimant's treating cardiologist because the doctor checked several boxes indicating that the claimant could work a full day, but ultimately opined (without explanation) that the claimant could work only four hours per day. Unlike the claimant in Smallwood, the plaintiff was found by Mr. Crowley to have several mild limitations which, in combination, could indicate a marked limitation in the domain of attending and completing tasks. 20 C.F.R. § 416.926a(e)(2). The ALJ substituted her judgment for Mr. Crowley's when she implicitly determined that the combination of mild limitations did not collectively constitute a marked limitation in the domain of attending and completing tasks.

The Commissioner also cites White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002) (ALJ must give controlling weight to treating physician's opinion if it is well supported and is not

inconsistent with other substantial evidence) and Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir 1994) (same). Neither one of these cases permit an ALJ to substitute his or her interpretation of the medical data for that of the medical source. It is unreasonable for the Commissioner to argue that ALJ properly discounted Mr. Crowley's opinion as internally inconsistent.

### B. Statements of the Plaintiff's Teachers

The district judge agreed with the plaintiff that the ALJ did not properly assess the statements of his teachers. *Report*, p. 15. The district judge stated:

> Teachers are considered to be "other sources" who are allowed to give opinions on the severity of an impairment. The ALJ only briefly mentions the teachers' opinions, and mentions only the opinions that support her conclusions. (R. 21-22). The ALJ never discusses what weight she gives these opinions.
>
> The Court agrees with Plaintiff that the ALJ failed to adequately address the teachers' comments. Although they may not be conclusive evidence, the teachers' comments corroborate Crowley's evaluation and conclusions. Additionally, the ALJ needs to explain why the opinion of the state agency non-examining psychologist deserves to outweigh that of the educational professionals who has the opportunity to observe the child in a professional setting.
>
> On remand, the ALJ needs to examine the teachers comments regarding Plaintiff's ability for attending and completing tasks.

Id.

As discussed above, in addition to evidence from acceptable medical sources, the Social Security Administration may also use evidence from other sources to show the severity of a child's impairment(s) and how a child typically functions compared to children the same age

who do not have impairments. 20 C.R.F. § 416.914(d). School teachers are included in these other sources. Id. at § 416.914(d)(2).

Although the regulations do not explicitly address how to evaluate evidence from other sources, they do require consideration of such evidence when evaluating an acceptable medical source's opinion. SSR 06-03P, 2006 WL 2329939 at *4 (August 9, 2006). "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

The Commissioner asserts that the ALJ acted reasonably by failing to assess the teachers' statements because the statements "were not tantamount to a professional opinion that [the plaintiff's] problems in attending and completing tasks were caused by a medically determinable impairment, rather than environmental factors." *Response*, p. 6. However, the ALJ did not provide an explanation for her failure to address the teachers' statements, and "the district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). It is not reasonable for the Commissioner to provide a post-hoc rationalization for the ALJ's failure to address the teachers' statements.

### C. Credibility of Ms. Lucero's Testimony

The district judge agreed with the plaintiff that the ALJ did not properly assess the credibility of the testimony of the plaintiff's mother, Ms. Lucero. The ALJ discussed Ms. Lucero's testimony as follows:

> The claimant's mother testified that she goes to meetings at school for her son, where they discuss his strengths. She reported that his teachers and a school psychologist are involved. She stated that he gets pulled out of his class to go to special education classes as he needed special help in his reading and writing. She said that he does not finish what he is asked to do, she has to repeat instructions to him, and she has to help him with his homework. She related that when he is told to brush his teeth he just goes in the bathroom and "messes around." She testified that he has difficulty finishing his work at school, and mostly has to work on his vocabulary. She does not believe that he could function in a normal classroom situation.
>
> The claimant's mother testified further that the claimant[] has had counseling at Spanish Peaks during the summer, for anger management, and she is working at getting him more counseling. She indicated that they had just moved so she had not had the parent-teacher conference yet. She said that she was meeting a teacher twice a week for his vocabulary last year and the claimant was getting speech therapy two hours per day twice a week last year. She stated that he also had difficulty paying attention at school and had some ADHD classes scheduled. She noted that his anger management classes were cancelled, and she was told it was up to her if he was to repeat the first grade. She reported that he has homework every night, she has to help him with his homework, and she has to make sure he concentrates on doing his work.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; i.e., not being able to stay on task. However, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or

> combination of impairments that functionally equals the listing for the reasons explained below.

*Record*, p. 14.

The district judge found that Ms. Lucero's testimony was not properly evaluated by the ALJ:

> Since Plaintiff could not adequately testify on his own behalf, Lucero's testimony as to his symptoms must instead be used. 20 C.F.R. § 416.928(A). The ALJ must make specific findings concerning the credibility of her testimony. See Briggs *ex rel* Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001).
>
> Here, the ALJ's statement that Lucero's testimony is not credible appears to be "just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 391 (10th Cir. 1995). The ALJ does not explain what specific evidence leads her to discount the testimony; instead, the ALJ expresses that she disagrees with the testimony simply because it does not match her conclusion. This explanation is too vague. Considering that Lucero's testimony is consistent with all of the other individuals that had direct contact with Plaintiff, the ALJ must thoroughly explain why she has determined that the testimony is not credible. Briggs, 248 F.3d at 1239.
>
> On remand, the ALJ must make specific findings concerning the credibility of Lucero's testimony.

*Order* [Doc. #17], pp. 16-17.

In Briggs, the Tenth Circuit stated that "[i]f the child claimant is unable to adequately describe his symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. 20 C.F.R. § 416.928(a). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Id. at 1239.

The Commissioner merely asserts that the ALJ "followed the requisite two-step analysis for evaluating credibility" and "went on to discuss the evidence she relied on." *Response*, pp. 6-

7. However, the ALJ's discussion of the evidence does not contain any specific findings regarding the credibility of Ms. Lucero. The Commissioner has failed to provide a reasonable basis for his legal theory.

**D. Attorney's Fees and Expenses**

The Commissioner has failed to establish that his litigation position was substantially justified. Therefore, the plaintiff is entitled to attorney's fees and expenses under the EAJA. The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

The plaintiff requests an award for expenses for service of process in the amount of $16.62. He further requests reimbursement for 36.5 hours of work at the rate of $167.50 per hour. This sum was calculated based on the Consumer Price Index for this area which shows a 36.55 percent increase in the cost of living since the EAJA's maximum hourly attorney fee was set at $125 per hour on March 29, 1996. The plaintiff requests a total of $6,130.37. *Motion*, pp. 1-2; *Plaintiff's Reply Brief Regarding Motion for Attorney's Fees Under the Equal Access to Justice Act* [Doc. #22], pp. 9-11.

The defendant does not dispute the expenses, hours billed, or hourly rate, and they do not appear unreasonable. Accordingly, the plaintiff is entitled to an award of expenses and attorney's fees in the amount of $6,130.37.

## IV. CONCLUSION

I respectfully RECOMMEND:

1. The plaintiff's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 [Doc. #19] be GRANTED; and

2. The plaintiff be awarded attorney's fees and costs in the amount of $6,130.37.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 13, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge